IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| AIMEE MADDONNA,<br><br>               Plaintiff,<br><br>   v.<br><br>UNITED STATES DEPARTMENT OF<br>HEALTH AND HUMAN SERVICES, *et al.*,<br><br>               Defendants. | Case No. 6:19-cv-3551 (TMC) |

**FEDERAL DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS**

## INTRODUCTION

At the motion to dismiss stage, the facts before this Court are only those pleaded in the Complaint in non-conclusory fashion. Here, those facts are that Plaintiff has *not* been denied the opportunity to work with children in the SC Foster Care Program but, instead, has decided not to pursue that opportunity because one particular private organization declined to work with her; that the organization's decision was motivated by its religious beliefs, not any government policy; and that South Carolina, not HHS, decides which entities are licensed and funded under the SC Foster Care Program. The only HHS actions at issue, the January 2019 conditional exception issued to the State and HHS's notice of non-enforcement of various regulations, were exercises of enforcement discretion. Plaintiff lacks standing to challenge either action and, in any event, the former action neutrally accommodated religious liberty and the latter has nothing to do with religion at all. Plaintiff's Complaint thus fails both to support the Court's jurisdiction and to state any claim against the Federal Defendants. Plaintiff's Opposition does not show otherwise.

## ARGUMENT

### I.   Plaintiff Lacks Standing to Sue the Federal Defendants.

The Motion to Dismiss showed that Plaintiff lacks standing to bring this suit against HHS because her alleged injury—denial of an opportunity to volunteer with foster children—was caused by a non-party, Miracle Hill, acting pursuant only to its own religious beliefs. Thus, as dictated by precedent—principally *Doe v. Obama*, 631 F.3d 157 (4th Cir. 2011); *Allen v. Wright*, 468 U.S. 737 (1984); and *Frank Krasner Enters., Ltd. v. Montgomery County*, 401 F.3d 230 (4th Cir. 2005)—Plaintiff's injury is not traceable to HHS, nor redressable by the relief sought. Fed. Defs.' Mem. in Support of their Mot. to Dismiss ("Mem.") at 9–14, ECF No. 34-1. Moreover, Plaintiff lacks standing to challenge HHS's notice of non-enforcement because that November

2019 action occurred over 9 months after her alleged injury and, therefore, could not have "caused" her injury. *Id.* at 15 (citing *Maddonna I* Order at 16). Plaintiff also may not assert injury as a taxpayer. Mem. at 14 n.3. Plaintiff fails to rebut these points.

### A.     Plaintiff Lacks Taxpayer Standing.

Much of Plaintiff's argument against these dispositive principles is devoted to re-characterizing her injury as one that more directly relates to the Federal Defendants, but that effort runs directly into the rule against taxpayer standing. Specifically, Plaintiff argues that her injury does not arise simply from "religious discrimination"—that is, conduct undertaken only by Miracle Hill—but, rather, "religious discrimination" carried out by a "*government*-funded child-placement agency" in relation to a "*government* program." Pl.'s Mem. in Opp'n to Fed. Defs.' Mot. to Dismiss ("Opp'n") at 7, ECF No. 38. In so arguing, Plaintiff appears to be trying to invoke standing based on her status as a taxpayer without saying so. But regardless of the label applied, Plaintiff is arguing for taxpayer standing. Indeed, elsewhere in her brief, that fact is made clear where Plaintiff states: "But for HHS's ongoing funding and failure to ensure that the foster-care services are nondiscriminatory, Mrs. Maddonna would not and could not suffer religious discrimination in a *federally funded* program." *Id.* at 6 (emphasis added).

The fundamental rule against taxpayer standing forecloses this argument. *Hein v. Freedom From Religion Found., Inc.*, 551 U.S. 587, 599 (2007). Were it otherwise, the plaintiffs in *Doe v. Obama*, who similarly alleged that the Government had permitted federal funding of conduct that violated their constitutional rights, would have avoided the standing defects that doomed their suit. 631 F.3d at 159. But the *Doe* court did not hold that the fact of federal funding established jurisdiction. It instead looked to the underlying conduct allegedly causing injury and determined that such conduct was not traceable to the Government.

Plaintiff does not explain how her theory of injury can be reconciled with these precedents. Consistent with this Court's prior ruling on taxpayer standing, *see Maddonna I* Order at 13–15, ECF No. 34-3, Plaintiff's theory of injury should be rejected.

### B.     Plaintiff Cannot Challenge HHS Actions Postdating Her Alleged Injury.

Plaintiff also lacks standing to challenge the notice of non-enforcement for the additional reason that it postdates her alleged injury by over 9 months.[1]  Beyond asserting that her "injury is ongoing," Opp'n at 8 n.2, Plaintiff cites no authority to show how she can establish that HHS's action could have caused an injury that occurred *before* that action.  In accord with the Court's prior decision, the Court should conclude Plaintiff lacks standing to challenge the notice of non-enforcement.  Mem. at 15 (citing *Maddonna I* Order at 16).

### C.     Plaintiff Fails to Show Traceability or Redressability for Her Alleged Injury.

**1.**     In responding to Federal Defendants' traceability arguments, Plaintiff labors to distinguish *Doe v. Obama* and *Allen v. Wright*.  To her credit, she fairly synthesizes the rule of those cases, but in a fashion fatal to the Complaint: "an injury is not fairly traceable to the government when it was perpetrated by a third party and a change in the government's conduct either would not have changed the injury-causing activity or it is purely speculative whether that activity would cease."  Opp'n at 8.  That is the case here.  The Complaint alleges Miracle Hill's alleged action was based on its religious beliefs, not federal policy.  Miracle Hill was thus an "intervening cause" of Plaintiff's injury.  Mem. at 13 (quoting *Doe v. Obama*, 631 F.3d at 161).

**2.**     Plaintiff's redressability arguments fare no better.  Plaintiff states that she is "not seeking an order requiring Miracle Hill (or anyone else) to accept her as a volunteer or foster

---

[1] Plaintiff has clarified that she is not challenging the other HHS action referenced in the Complaint that post-dates her injury, the notice of proposed rulemaking.  Opp'n at 23 n.5.

3

parent," but rather an injunction that "HHS must either require South Carolina and its sub-grantees to provide the federally funded services in a religiously nondiscriminatory fashion, or curtail the funding" of the SC Foster Care Program. Opp'n at 9. That statement of the relief sought shows how far afield Plaintiff's Complaint strays from the particular injury that is actually alleged, namely her interaction with *one* sub-grantee of the State. Plaintiff has not shown that the relief sought against the Federal Defendants is likely to redress the injury allegedly caused by that sub-grantee. The only basis to seek relief as to federal funding of the State and all of its sub-grantees is through taxpayer standing, which Plaintiff cannot do.

Plaintiff's injuries are not redressable for the additional reason that HHS has no control over the State's decisions about which entities to license as child-placing agencies in the State foster care system. Plaintiff has three responses, none of which is successful.

First, she again characterizes her injury as a taxpayer challenge to the manner in which federal funds are expended, but that theory of standing is foreclosed. *See* Opp'n at 10 (requested relief "would fully remedy the harm caused by *that federal funding*").

Second, she argues that HHS has authority to regulate the SC Foster Care Program, including authority to withhold federal funds. *See* Opp'n at 10. But regardless of HHS's ability to condition the receipt of federal funds, no authority provides HHS with control over the State's decisions regarding which entities to license as child-placing agencies in the State foster care system. Even if the Court ordered the Federal Defendants to cease issuing grants to the State under Title IV-E, it would still be speculative to say that the State would then de-license Miracle Hill (instead of simply electing to maintain Miracle Hill's licensure without federal funds for reimbursement). Thus, Plaintiff fails to show the relief sought would redress her injury.

Third, Plaintiff responds that the existence of multiple causes of an injury does not

4

necessarily defeat redressability. Federal Defendants do not dispute that basic point, but that does not relieve Plaintiff of the burden to "demonstrate standing for each claim [s]he seeks to press and for each form of relief that is sought." *Town of Chester, N.Y. v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1650 (2017) (citation omitted). And that means that Plaintiff must show "that each defendant caused [the] injury and that an order of the court against each defendant could redress the injury." *Calzone v. Hawley*, 866 F.3d 866, 869 (8th Cir. 2017) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). Plaintiff has not shown that any order against the Federal Defendants, standing alone, is likely to redress any cognizable injury. She cannot stitch together inadequate standing allegations against multiple parties to create an Article III case or controversy.

**3.** Plaintiff concluding reliance on an out-of-circuit district court decision, *Marouf v. Azar*, 391 F. Supp. 3d 23 (D.D.C. 2019), is misplaced. As an initial matter, the *Marouf* court was not bound by the Fourth Circuit precedent discussed above that dooms Plaintiff's standing here. Regardless, however, *Marouf* did not involve grants to states under the Title IV-E foster care program but, instead, unrelated programs where the district court concluded that HHS *itself* selected the grantee that allegedly engaged in discriminatory conduct. *Id.* at 36 (emphasizing HHS's selection of an organization "as a federal grantee"). Because the Federal Defendants do not and did not select Miracle Hill as a grantee, *Marouf* is inapposite.

**II.     Section 701(a)(2) Forecloses Plaintiff's APA Claims.**

HHS's Motion also showed that Plaintiff's APA claims are foreclosed because the January 2019 conditional exception and the notice of non-enforcement represent agency "decision[s] not to prosecute or enforce" that are "presumed immune from judicial review under § 701(a)(2)." Mem. at 15–19 (quoting *Heckler v. Chaney*, 470 U.S. 821 (1985)).

Plaintiff argues that the conditional exception is reviewable because it is not "an individual,

5

retrospective enforcement determination." Opp'n at 12. But the *Chaney* presumption is not limited to retrospective determinations, or enforcement decisions limited to particular entities. Indeed, Plaintiff's argument is inconsistent with the facts and reasoning of *Chaney* itself. The non-enforcement decision in that case was not an individualized decision by the FDA to forgo enforcement against a single alleged violator. Rather, the plaintiffs in *Chaney* requested that the FDA enforce the Federal Food, Drug, and Cosmetic Act's misbranding prohibition against the use of certain drugs for capital punishment by taking "various investigatory and enforcement actions" against "drug manufacturers," "prison administrators," and "all [others] in the chain of distribution"; the FDA, however, *categorically* concluded that its enforcement discretion "should not be exercised to interfere with this particular aspect of state criminal justice systems." 470 U.S. at 824–25. In short, *Chaney* establishes that the question under section 701(a)(2) is whether the type of agency decision at issue is inherently discretionary in nature, not the number of people to whom it applies. Moreover, at the core of *Chaney*'s reasoning is the idea that courts lack a basis to second-guess agency decisions about how "resources are best spent" and whether certain enforcement activity "best fits the agency's overall policies." *See* 470 U.S. at 831. Those kinds of decisions necessarily take account of agency policy and budgetary priorities that extend beyond any particular case and that encompass prospective judgments about the agency's work.

Plaintiff relies primarily on *Casa de Maryland v. U.S. Department of Homeland Security*, 924 F.3d 684 (4th Cir. 2019), to argue that HHS's non-enforcement decisions are reviewable. That case is inapposite. *Casa de Maryland* stands for the proposition that "an agency's expression of a broad or general enforcement policy *based on the agency's legal interpretation* is subject to review." *Id.* at 699 (emphasis added). Thus, the Court of Appeals found the Department of Homeland Security's decision to end the Deferred Action for Childhood Arrivals policy was

6

reviewable because it "relie[d] on" the conclusion that DACA was unlawful. *Id.* at 699–70.[2] Here, by contrast, HHS's non-enforcement decisions were informed by, *inter alia*, non-legal criteria such as programmatic burdens, compliance costs, fairness, and administrative burdens. Mem. at 17, 19.

Plaintiff's other attempts to avoid the dispositive impact of *Chaney* and *Sierra Club v. Larson*, 882 F.2d 128 (4th Cir. 1989), are unavailing. Plaintiff invokes dicta in *Chaney* that leaves open the possibility that the presumption of non-reviewability "may" be overcome if an agency has "'consciously and expressly adopted a general policy' that is so extreme as to amount to an abdication of its statutory responsibilities." 470 U.S. at 833 n.4 (citation omitted). Plaintiff fails to show that HHS could "justifiably be found" to have abdicated its statutory responsibilities. Section 75.300(c) is a regulation, not a statute, rendering this possible exception irrelevant because there is no "statutory responsibility" at issue. And granting an exception to a single state or declining enforcement of a group of regulations pending further rulemaking are not actions so "extreme" that they "amount to an abdication" of responsibility.

Finally, Plaintiff is unable to distinguish *Larson*. Opp'n at 15–16. As in *Larson*, the conditional exception here concerns only one entity potentially subject to enforcement action—South Carolina. And contrary to Plaintiff's assertion, the Fourth Circuit in *Larson* did not rely on South Carolina's progress in complying with federal law in finding that the Secretary's decision was non-reviewable. Instead, the court rejected the plaintiff's "attempts to characterize the Regional Administrator's letter . . . as a finding . . . that South Carolina was maintaining effective

---

[2] The United States has sought further review of *Casa de Maryland* in the Supreme Court. Although the Government's petition remains pending, the Supreme Court heard argument in November 2019 on the precise issue presented in *Casa de Maryland*—whether DHS's decision to wind down the Deferred Action for Childhood Arrivals policy is judicially reviewable. *See NAACP v. Trump*, No. 18-588 (U.S.). Accordingly, the Supreme Court is poised to shortly issue highly relevant, and possibly dispositive, guidance regarding Plaintiff's argument.

control." *Larson*, 882 F.2d at 131. The court held that judicial review was not "intended" "to check the Secretary's decision to encourage compliance through informal means or to determine that an enforcement action is unnecessary in a given state." *Id.* at 132.[3]

## III. Plaintiff Fails to State a Claim Against the Federal Defendants.

### A. Plaintiff Fails to State Claims Based on Alleged Non-Federal Actions.

The Motion to Dismiss also showed that, under *Blum v. Yaretsky*, 457 U.S. 991 (1982), and *Milburn by Milburn v. Anne Arundel County Department of Social Services*, 871 F.2d 474 (4th Cir. 1989), Plaintiff cannot state claims based on the alleged actions of Miracle Hill or on South Carolina's expenditure of federal grant funds on faith-based sub-grantees that South Carolina selects and licenses. Mem. at 20–25. That is because "[m]ere approval of or acquiescence" in another's actions is not enough to hold the Government responsible for those actions; such actions must, instead, have been the product of "coercive power" by the Government or "significant encouragement." Mem. at 20 (quoting *Blum*, 457 U.S. at 1004–05). HHS's actions do not meet that standard.

Plaintiff attempts to distinguish *Blum* by asserting that she is not challenging Miracle Hill's action but, instead, HHS's decision to "fund" and "clear the regulatory hurdles" in regard to Miracle Hill's actions. Opp'n at 32–33. Plaintiff thus appears to recognize that she cannot hold the Federal Defendants directly responsible for Miracle Hill's actions under *Blum* but, instead, must base her claims on federal action. But here the only federal actions alleged are the conditional exception, which neither coerced Miracle Hill to decline to work with Plaintiff nor encouraged it

---

[3] Federal Defendants recognize that *Chaney* does not bar review of agency action that is allegedly unconstitutional and are not seeking dismissal of Counts I or II on this basis. Mem. at 15–16. But Counts IV and V, which depend on the APA for subject matter jurisdiction, are foreclosed in light of section 701(a)(2).

8

to do so, and the notice of non-enforcement, which did not even exist when Plaintiff sought assistance from Miracle Hill. Given the lack of coercion or encouragement by Federal Defendants, there is no basis under *Blum* to impute Miracle Hill's alleged actions to the Federal Defendants. *See Blum*, 457 U.S. at 1003; *id.* at 1004–05. Neither is there any basis to do so under *Milburn*, where the complaint alleged that the defendant state officials "displayed gross negligence and deliberate indifference to [the child's] welfare [by] continu[ing] his placement in the foster home of the defendants" even after receiving reports from hospital employees of suspected child abuse. 871 F.2d at 475–76. That the state officials in *Milburn* "might have intervened" to stop the private acts at issue did not provide a cause of action against the officials because the complaint did not meet *Blum*'s encouragement-or-coercion standard. *Milburn*, 871 F.2d at 479.[4]

Plaintiff also tries to distinguish *Blum* and *Milburn* by arguing that this case does not involve the question whether "private entities named as defendants are state actors." Opp'n at 32. But *Blum* involved the precise question here: whether the conduct of other actors can be imputed to the government. *See Blum*, 457 U.S. at 1003 (observing that the case was "obviously different" from one where a court must determine if private party is a state actor). And *Milburn* confirms that *Blum*'s encouragement-or-coercion standard applies to claims seeking to impute third-party actors' conduct to government officials. *Milburn*, 871 F.2d at 479 (rejecting claims against state officials "who might have intervened" to stop private acts at issue). Plaintiff's attempt to tie the Federal Defendants to Miracle Hill's actions should be rejected.

---

[4] Contrary to Plaintiff's argument, Federal Defendants did not assert a general rule that *Milburn* precludes claims related to foster care. *See* Opp'n at 33. Federal Defendants have instead shown that *Milburn* reaffirms that *Blum*'s coercion-or-encouragement standard applies to the imputation of third-party conduct to the government. Additionally, the "care of foster children is not traditionally the exclusive prerogative of the State," rendering irrelevant the only other manner by which private conduct may be imputed to the government. *See* Mem. at 21–23.

9

Plaintiff also cites authority stating that the "state may not induce, encourage or promote private persons to accomplish what it is constitutionally forbidden to accomplish." Opp'n at 26 (quoting *Norwood v. Harrison*, 413 U.S. 455, 465 (1973)); *see also id.* at 34–35. But that rule is consistent with *Blum*'s holding that the Government is responsible for others' conduct only where that conduct results from "coercive power" or "significant encouragement" by the Government. The Complaint contains no allegation supporting any such inducement, encouragement, or promotion of Miracle Hill's alleged action by the Federal Defendants.

### B.     Plaintiff Fails to State a Claim Based on HHS's Non-Enforcement Decisions.

Finally, Plaintiff fails to state a claim based on HHS's non-enforcement decisions, whether under the Establishment Clause (because those decisions are at most a neutral accommodation of religious freedom motivated by secular concerns) or equal protection (because Plaintiff was not denied equal treatment by those decisions). Mem. at 25–30. Plaintiff's arguments as to her equal protection claim warrant little further discussion, as she simply repackages her state action arguments, which fail for the reasons described above. *See* Opp'n at 33–35. As shown below, Plaintiff's arguments regarding her Establishment Clause claim also fail.

**1.**     To begin, Plaintiff does little to rebut the Federal Defendants' application of the first and third aspects of the *Lemon* test. She does not substantively respond to the Federal Defendants' arguments about *Lemon*'s third prong concerning excessive entanglement between government and religion, effectively conceding that HHS has cleared that hurdle. As to the first *Lemon* prong, Plaintiff omits the relevant standard, under which the Government need only "show that it had a plausible secular purpose for its action" that was not "pretextual." Mem. at 26 (quoting *Wood v. Arnold*, 915 F.3d 308, 315 (4th Cir. 2019), *cert. denied*, No. 18-1438). Instead, Plaintiff argues that HHS's reasons for issuing the conditional exception were not good enough. Opp'n at

10

23–24. But *Lemon*'s purpose prong is not akin to arbitrary-and-capricious review. Plaintiff does not dispute that the purposes for the conditional exception apparent on its face are secular—to comply with RFRA and to ensure the continued availability of entities to serve the welfare of children in the SC Foster Care Program. Nor does Plaintiff provide any basis to conclude these purposes were a sham. Plaintiff fares no better as to the notice of non-enforcement, which does not even reference religion. The Court need go no further on this prong. *Lambeth v. Bd. of Comm'rs of Davidson Cty., N.C.*, 407 F.3d 266, 270 n.2 (4th Cir. 2005) (affirming dismissal where plaintiffs failed to allege that concededly secular purpose was pretextual).

    **2.**    Plaintiff spends the lion's share of her Establishment Clause argument on *Lemon*'s second prong—whether HHS's non-enforcement decisions have a "primary effect that neither advances nor inhibits religion." *Wood*, 915 F.3d at 314. Plaintiff first argues that the non-enforcement decisions carry a message of disfavor for persons "denied service" by sub-grantees of HHS grantees. Opp'n at 24–25. Plaintiff is incorrect, however, that the January 2019 conditional exception contemplates *any* person being denied the opportunity to be a foster parent in the SC Foster Care Program. While it is certainly true that a person may not be able to work with a particular child-placing agency, the exception's referral condition shows that the Federal Defendants took steps to ensure that there will be another option for a prospective foster parent. By Plaintiff's own admission, HHS's efforts have succeeded in her case and she has multiple options available for working with children, Compl. ¶ 50; that she has not sought those opportunities is not evidence of any governmental disfavor of her religion (or favoritism of Miracle Hill's). Nor does the notice of non-enforcement carry any such message of disfavor. Indeed, that notice of non-enforcement does not specifically relate to faith-based sub-grantees at all; it covers all grantees and sub-grantees.

11

That Miracle Hill recruits only foster parents having particular religious beliefs also does not mean that it is using government funds "for religious purposes." Opp'n at 25–26. The funds are used to reimburse child placement activities, not religious activities. Mem. at 3 (citing 42 U.S.C. § 674(a)(3); 45 C.F.R. § 1356.60(c)). Plaintiff furnishes no response to the Fourth Circuit's decision in *Columbia Union College v. Oliver*, 254 F.3d 496 (4th Cir. 2001), where the court upheld the eligibility for state grants of a college affiliated with the Seventh-day Adventist Church, even though the college "gave an express preference in hiring and admissions to members of the Church." *Id.* at 508. Miracle Hill's status as a recipient of public funds for non-religious foster placement activities that applies a religious preference in recruiting foster parents is indistinguishable in this respect from the college in *Columbia Union*.

Plaintiff also argues that HHS's enforcement decisions unconstitutionally coerce the exercise of religion because individuals may feel pressure to adopt Miracle Hill's religious beliefs. Opp'n at 26–27. Plaintiff's dispute is once again with Miracle Hill, not HHS. Indeed, the coercion test described in *Lee v. Weisman*, 505 U.S. 577 (1992), was "confine[d]" by the "dominant fact[]" in that case that "State officials *direct[ed]* the performance of a formal religious exercise at promotional and graduation ceremonies for secondary schools." *Id.* at 586 (emphasis added); *see also id.* at 587 (school principal "decided that an invocation and a benediction should be given" and "chose the religious participants").[5] Here, HHS did not direct Miracle Hill not to work with Plaintiff. Furthermore, if HHS's non-enforcement decisions in this case could be construed as

---

[5] It is also unclear whether *Lee*'s coercion test even applies outside of the narrow context of prayer and other religious practices in schools. *See Lee*, 505 U.S. at 586–87 (rejecting the invitation to reconsider *Lemon* because "the controlling precedents as they relate to prayer and religious exercise in primary and secondary public schools" were enough to decide the case); *Myers v. Loudoun Cty. Pub. Sch.*, 418 F.3d 395, 406 (4th Cir. 2005) ("The Court has reflected upon the important role that indirect coercion plays in determining if a *public school activity* violates the Establishment Clause." (emphasis added)).

coercive and therefore unconstitutional, then Title VII's exemption of religious organizations from that statute's religious discrimination provision could be viewed as similarly unconstitutional under analogous reasoning. By virtue of that exemption, employees of religious organizations may feel pressure to accede to their employers' religious beliefs in a similar sense as alleged here. Nonetheless, the Supreme Court has upheld Title VII's exemption for religious organizations because the relevant test is whether the "*government itself*" has advanced religion, not whether it has accommodated a private entity's beliefs. Mem. at 28 (citing *Corp. of the Presiding Bishop of the Church of Jesus Christ of Latter-Day Saints v. Amos*, 483 U.S. 327 (1987)).

Plaintiff further argues that the January 2019 conditional exception issued to the State fails the Establishment Clause's test for religious accommodations. Opp'n at 27–31. Plaintiff is wrong. "There is ample room under the Establishment Clause for benevolent neutrality which will permit religious exercise to exist without sponsorship and without interference." *Amos*, 483 U.S. at 334. The conditional exception exhibits precisely that kind of benevolent neutrality by lifting a burden on Miracle Hill's religious exercise to allow it to participate in a secular social services program. Moreover, there is no special test for religious accommodations; they are evaluated according to the *Lemon* factors. *Madison v. Riter*, 355 F.3d 310, 316 (4th Cir. 2003) (applying *Lemon* to religious accommodation statute).

Plaintiff nevertheless argues that any governmental accommodation of religion fails unless it "lift[s] *substantial*, government-imposed burdens on the exercise of religion." Opp'n at 27 (emphasis added). Plaintiff is wrong that such a substantiality rule exists or that the conditional exception fails to lift a substantial burden on religious exercise. To begin, Plaintiff's support for this purported rule is *County of Allegheny v. ACLU, Greater Pittsburgh Chapter*, 492 U.S. 573 (1989), which expressly stated that "the concept of accommodation plainly ha[d] no relevance" to

13

that case because it involved the display of a crèche at a government building, not any attempt to lift burdens on religious exercise. *Id.* at 613 n.59. Thus, it can hardly be said that the Court broke new ground in *County of Allegheny* on religious accommodations under the Establishment Clause.[6]

In any event, the primary effect of HHS's action *is* to lift a substantial government-imposed burden on religious practice. According to the facts alleged in the Complaint and stated in HHS's decision letter, Miracle Hill's decisions regarding which foster parents to work with are motivated by core precepts of its religious faith. Compl. ¶¶ 82–88, 95; Mem., Ex. A at 1–2. Applying section 75.300(c)'s religious non-discrimination provision to South Carolina imposes a burden on Miracle Hill by putting it to the choice of acting contrary to its religious beliefs or possibly losing government funding. The Establishment Clause plainly permits the Government to lift burdens that would impose economic costs on parties if they refused to act contrary to their faith. *See, e.g.*, *Amos*, 483 U.S. 327; *cf. Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 720 (2014) (federal requirement to provide contraceptive coverage imposed a substantial burden on religious exercise under RFRA as to persons who believed that providing such coverage would "seriously violate[] their religious beliefs" and where refusal to provide coverage would result in financial penalties).

Plaintiff next argues that an accommodation cannot "shift costs, harms, or other burdens to nonbeneficiaries" and that the conditional exception does this by "prevent[ing]" persons "from participating in a governmental program" "on the same footing" as others. Opp'n at 28. This

---

[6] Plaintiff's argument is further undermined by a recent decision in the Western District of Michigan. That decision found that enforcement of the federal regulation at issue here against another state (Michigan) as to a faith-based foster care agency in Michigan that objected on religious grounds to recommending same-sex couples as potential foster parents would likely violate the agency's rights under RFRA. *Buck v. Gordon*, No. 1:19-cv-286, 2019 WL 4686425 (W.D. Mich. Sept. 26, 2019). That holding, preliminarily enjoining the enforcement of the regulation against Michigan as to that faith-based foster care agency, is in tension with the relief that Plaintiff seeks here—an injunction *ordering* HHS to enforce that regulation in relation to a faith-based foster care agency.

contention lacks support in the Complaint, which does not allege that Plaintiff has been denied the opportunity to be a volunteer or foster parent in the State foster care system on the basis of religion. Thus, Plaintiff's argument fails on its own terms. In any event, there is little authority for the idea that an accommodation cannot impose *any* burden on non-beneficiaries of *any* kind. In *Estate of Thornton v. Caldor, Inc.*, 472 U.S. 703 (1985), the Court struck down a statute in which "religious concerns automatically control[led] over all secular interests" and that took "no account of the convenience or interests" of third parties. *Id.* at 708–10. The exception issued by HHS, with its referral condition, bears no resemblance to such a law.

4. Finally, Plaintiff asserts that the conditional exception represents a denominational preference subject to strict scrutiny because HHS has "prefer[ed] evangelical Christian beliefs over all others faiths." Opp'n at 31. The conditional exception does not support this assertion; the face of the decision letter granting the exception does not express a preference for any particular religious faith, let alone Miracle Hill's beliefs. Mem., Ex. A. The absence of any facial preference is dispositive: "when it is claimed that a denominational preference exists, the initial inquiry is whether the law facially differentiates among religions" and, if it does not, the *Lemon* test applies instead. *Hernandez v. Comm'r of Internal Revenue*, 490 U.S. 680, 695 (1989) (no denominational preference where statute did not make "explicit and deliberate distinctions between different religious organizations" but "appl[ied] instead to all religious entities").

## CONCLUSION

For the foregoing reasons, the Court should dismiss the Complaint as to the Federal Defendants.

Dated: May 1, 2020

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

PETER M. McCOY
United States Attorney

_/s/ Christie V. Newman_
CHRISTIE V. NEWMAN (#5473)
Assistant United States Attorney
1441 Main Street, Suite 500
Columbia, SC 29201
Telephone: (803) 929-3021
Email: Christie.Newman@usdoj.gov

MICHELLE BENNETT
Assistant Branch Director

CHRISTOPHER A. BATES
Senior Counsel to the Assistant Attorney General

JAMES R. POWERS (TX Bar No. 24092989)*
Trial Attorney
Federal Programs Branch
U.S. Department of Justice, Civil Division
1100 L Street, NW
Washington, DC 20005
Telephone: (202) 353-0543
Email: james.r.powers@usdoj.gov

*Admitted *pro hac vice*

*Counsel for Federal Defendants*