IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| Aimee Maddonna, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 6:19-cv-03551-JD |
| | ) |
| United States Department of Health and Human Services et al., | ) |
| | ) |
| Defendants. | ) |

### DEFENDANTS HENRY MCMASTER'S AND MICHAEL LEACH'S REPLY IN SUPPORT OF THE MOTION FOR JUDGMENT ON THE PLEADINGS

OFFICE OF THE ATTORNEY GENERAL

Robert D. Cook
South Carolina Solicitor General
Post Office Box 11549
Columbia, SC 29211
(803) 734-3970

DAVIDSON, WREN & DEMASTERS, P.A.

Kenneth P. Woodington
William H. Davidson, II
1611 Devonshire Drive, 2nd Floor
Post Office Box 8568
Columbia, SC 29202-8568
(803) 806-8222

NELSON MULLINS RILEY & SCARBOROUGH LLP

Miles E. Coleman
2 W. Washington St. / Fourth Floor
Greenville, SC 29201
(864) 373-2352

Jay T. Thompson
1320 Main Street / 17th Floor
Post Office Box 11070 (29211-1070)
Columbia, SC 29201
(803) 799-2000

*Attorneys for Governor Henry McMaster
and Director Michael Leach*

TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................1

CLARIFICATION OF THE FACTS............................................................................................2

ARGUMENT .......................................................................................................................4

    I.    *Fulton*'s holding is dispositive here............................................................4

    II.    The fact and reasoning of *Fulton* are sufficiently parallel to this suit to be controlling...................................................................................................7

    III.    *Fulton*'s effect on this suit is ripe for the Court's consideration .............................9

CONCLUSION...................................................................................................................11

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Corp. of Presiding Bishop of Church of Jesus Christ of Latter-day Saints v. Amos*,
    483 U.S. 327, 337 n.15 (1987) ...................................................................................... 5, 6, 8, 9

*Drager v. PLIVA USA, Inc.*,
    741 F.3d 470 (4th Cir. 2014) ....................................................................................................... 9

*Forest Hills Early Learning Center, Inc. v. Lukhard*,
    728 F.2d 230 (4th Cir. 1984) .................................................................................................. 4, 9

*Forest Hills Early Learning Ctr., Inc. v. Grace Baptist Church*,
    846 F.2d 260 (4th Cir. 1988) ....................................................................................................... 4

*Fulton v. City of Philadelphia*,
    141 S. Ct. 1868 (2021) ....................................................................................................... *passim*

*Hobbie v. Unemployment Appeals Comm'n*,
    480 U.S. 136 (1987) ................................................................................................................ 1, 4

*Kennedy v. St. Joseph's Ministries, Inc.*,
    657 F.3d 189, 194 & n.8 (4th Cir. 2011) ..................................................................................... 9

*McCall v. Finley*,
    362 S.E.2d 26 (S.C. Ct. App. 1987) ........................................................................................... 8

*Pulte Home Corp. v. Montgomery Cnty., Md.*,
    909 F.3d 685 (4th Cir. 2018) ....................................................................................................... 9

*Sherbert v. Verner*,
    374 U.S. 398 (1963) ................................................................................................................ 1, 4

**Statutes**

42 U.S.C. § 2000bb-1 *et seq.* ............................................................................................................ 7

S.C. Code Ann. § 1-32-40 ................................................................................................................ 7

**Rules**

FRCP Rule 12(c) .......................................................................................................................... 2, 8

Defendant Henry McMaster ("Governor McMaster" or "the Governor"), in his official capacity as Governor of the State of South Carolina, and Defendant Michael Leach ("Director Leach"), in his official capacity as the Director of the South Carolina Department of Social Services ("SCDSS") (collectively the "State Defendants"), moved for judgment on the pleadings in light of recent, controlling Supreme Court precedent. (*See* ECF No. 79.) Plaintiff's Opposition attempts to confuse the analysis with several novel, but unsupported, arguments and by deploying more than a few straw men. (*See* ECF No. 85.) Plaintiff previously cautioned the Supreme Court in an *amicus* brief filed in *Fulton v. City of Philadelphia*, 141 S. Ct. 1868 (2021), that a ruling in favor of the faith-based CPA in that case would erect an insurmountable obstacle to the claims raised in this case. The Supreme Court ruled unanimously in favor of the faith-based CPA, and Plaintiff now asks this Court to pretend it never happened. Her efforts are unavailing. The Court should enter judgment on the pleadings and dismiss the suit with prejudice.

## INTRODUCTION AND SUMMARY

Plaintiff's Opposition rests on fundamental misapprehensions of constitutional law. She seeks to distinguish *Fulton*, for example, by pretending that constitutional cases and clauses exist in silos, isolated from and unaffected by each other. Specifically, Plaintiff admits that *Fulton* and the Free Exercise Clause require the government to accommodate faith-based foster care providers when possible, but she argues that *Fulton* and the Free Exercise Clause are irrelevant here because this is an Establishment Clause case. Her argument ignores the settled principle that what is required by one provision of the Constitution cannot be forbidden by another. *See*, *e.g.*, *Hobbie v. Unemployment Appeals Comm'n*, 480 U.S. 136, 144–45 (1987); *Sherbert v. Verner*, 374 U.S. 398, 409 (1963). Because the State Defendants' accommodation of faith-based CPAs is consistent with and required by *Fulton* and the Free Exercise Clause, it therefore cannot violate the Establishment Clause.

1

Plaintiff argues further that the Supreme Court's recent, unanimous judgment in *Fulton* is not ripe for the Court's consideration in this suit. Her argument is contrary to Fourth Circuit precedent, which holds (1) that a timely Rule 12(c) motion is the appropriate manner in which to raise recent, dispositive case law, and (2) that District Courts should consider and grant such motions when the relief sought by the plaintiff is unobtainable or the plaintiff is incapable of prevailing on her claims. A court may (indeed, must) consider what effect intervening, binding precedent has on the cases before it. Plaintiff's argument that this Court should ignore binding Supreme Court precedent in ruling on this Motion is contrary to law and logic and simply highlights her understandable but desperate efforts to avoid the very outcome *Fulton* commands.

Finally, Plaintiff argues in a footnote that she didn't *really* mean what she said in the *amicus* brief she filed in *Fulton*, and, despite what she said in that brief, the ruling in *Fulton* isn't *really* relevant to this case. If victory has a thousand fathers, defeat is apparently an orphan. Having clearly staked out a position in her *amicus* brief in *Fulton*, Plaintiff may not so easily abandon it now.

### CLARIFICATION OF THE FACTS

Plaintiff's Opposition contains a factual recitation that indulges in a degree of creative license in its description of the events giving rise to this suit. The State Defendants will spare the Court a full rebuttal of the one-sided factual characterizations found therein, but will, however, correct three of them briefly. *First*, Ms. Maddonna has not been "deprived of the opportunity to participate in the state's foster-care program" or "turned away from a governmental program." (*Contra* ECF No. 85 at 1, 7, 12, 18.) The Complaint alleges only that Ms. Maddonna contemplated applying to one CPA—Miracle Hill—before filing this suit, but decided not to because she thought Miracle Hill might not want to work with her; she didn't even bother to approach any other CPAs or SCDSS about fostering. (*See* ECF No. 79 at 10–12.) But fostering and volunteer opportunities

2

at Miracle Hill are not the relevant "government program." Ms. Maddonna does not and cannot allege she has been turned away from *the State's* foster-care program, especially when, as the State Defendants have repeatedly noted in filings in this suit, she was and still remains welcome to apply to SCDSS or to a variety of local CPAs who gladly would work with her.

*Second*, Ms. Maddonna erroneously asserts nearly a dozen times that the State Defendants have granted faith-based CPAs a "blanket exemption" from antidiscrimination law. (*See* ECF No. 85 at 1, 2, 9, 11, 12, 14, 17, 19, 23, 24.) This is neither true nor even plausibly alleged in her Complaint. The State Defendants' actions that are challenged in this suit—*i.e.*, the Executive Order, waiver request, and granting of a regular license to Miracle Hill—were expressly and specifically limited in scope so as to parallel the contours of the exemptions required by controlling precedent (an approach that *Fulton* has confirmed) and mandated by statutes such as the federal Religious Freedom Restoration Act and the state Religious Freedom Act. (*See* ECF No. 1, ¶¶ 65–66, 68, 72; *see also* ECF Nos. 79-1, 79-2.) Plaintiff's insinuation that the State Defendants granted an unqualified and unlimited exemption from any and all nondiscrimination requirements and for any reason is neither alleged nor accurate.

*Third*, Ms. Maddonna argues that the Court ought not consider whether her cited religious beliefs actually align with Roman Catholic doctrine (her claimed faith) because it makes no difference to the constitutional analysis whether she is a Roman Catholic or merely holds religious beliefs of her own devising. (*See* ECF No. 85 at 10 n.2.) On this point she is correct. The Court need not determine whether Church doctrine aligns with Miracle Hill's doctrinal statement (indeed, the Church has already done so, *see* ECF No. 52 at 6–7 & n.7), nor are the specifics of Ms. Maddonna's beliefs pertinent to the pending Motion. However, it is Ms. Maddonna *herself* who has repeatedly injected the topic into this proceeding, repeatedly arguing that she suffered discrimination "*because she is Catholic*" (*see* ECF No. 85 at 1, 9–10, 18, 23; ECF No. 1 at ¶¶ 16,

3

83), and alleging she *cannot* affirm Miracle Hill's doctrinal statement because it is inconsistent with Roman Catholic doctrine (ECF No. 1 at ¶ 94). What she claims in the text of her Opposition, she cannot disclaim in a footnote. Having raised the topic repeatedly herself, she ought not berate the State Defendants for noting the inconsistencies therein.

## ARGUMENT

### I.  *Fulton*'s holding is dispositive here.

The State Defendants' Motion explained the dispositive effect of *Fulton* on the claims asserted against the State Defendants in this suit. (*See* ECF No. 79 at 14–27.) Plaintiff's Opposition seeks to distinguish *Fulton* on the basis that *Fulton* involved a claim under the Free Exercise Clause, while this suit involves claims under the Establishment Clause. (*See* ECF No. 85 at 9–13.) The case law she cites, however, stands merely for the proposition that the First Amendment's religion clauses must be construed in harmony with one another—a proposition that supports the State Defendant's position that accommodations required by the Free Exercise Clause cannot, by definition, be forbidden by the Establishment Clause. *See*, *e.g.*, *Hobbie*, 480 U.S. at 144–45 (discussing situations in which the government "must accommodate religious practices and that it may do so without violating the Establishment Clause" (cleaned up)); *Sherbert*, 374 U.S. at 409 (noting the Court was not "fostering an 'establishment' of the Seventh-Day Adventist religion" by requiring a state unemployment benefits program to accommodate Sabbatarians who refused Saturday work); *Forest Hills Early Learning Center, Inc. v. Lukhard*, 728 F.2d 230, 241 (4th Cir. 1984) (noting that "by definition, constitutionally compelled accommodation of free exercise rights cannot abridge the establishment clause"); *Forest Hills Early Learning Ctr., Inc. v. Grace Baptist Church*, 846 F.2d 260, 262–64 (4th Cir. 1988) (holding the state government did not violate

the Establishment Clause by granting exemptions to religious entities in an effort to protect their free exercise rights).

Plaintiff argues this case is distinguishable from *Fulton*, however, because this case involves an accommodation that supposedly causes third-party harms to prospective foster parents such as Ms. Maddonna, while the accommodation mandated by the Court in *Fulton* supposedly does not cause any such third-party harms. (*See* ECF No. 85 at 10–12.) The significance of this alleged distinction, she argues, is that a religious accommodation is unconstitutional if it causes any third-party harms. (*Id*. (citing *Estate of Thornton v. Caldor, Inc.*, 472 U.S. 703 (1985)).) Her argument fails for at least three reasons. *First*, the Supreme Court has expressly rejected it. *See Corp. of Presiding Bishop of Church of Jesus Christ of Latter-day Saints v. Amos*, 483 U.S. 327, 337 n.15 (1987) (upholding the legislatively-created religious accommodation in Title VII of the Civil Rights Act; rejecting the plaintiff's argument that third-party harms resulting from the accommodation rendered it unconstitutional; and noting that exemptions of this sort present "a very different case than *Estate of Thornton v. Caldor, Inc*."). *Second*, the third-party harm she claims to have suffered—namely, the inability to partner with the only CPA she deigned to approach—is not inflicted by the State Defendants. *See id*. ("[I]t was the Church . . . and not the Government, who put [plaintiff] to the choice of changing his religious practices or losing his job").[1] *Third*, the issue of third-party harms *was* squarely before the Court in *Fulton*. *See* Brief of Intervenor-Respondents at 45–48 & n.16 (arguing that an accommodation of Catholic Social Services would cause harm to prospective foster parents and children in foster care).[2] Allegations

---

[1] Indeed, in light of the undisputed availability of multiple other public and private avenues through which Ms. Maddonna could serve as a foster volunteer or foster parent, her non-participation in the foster care system is an injury inflicted by her own hand.

[2] Available at https://tinyurl.com/FultonIntervenorRespondents.

5

of third-party harm did not dissuade the Supreme Court from holding that the Constitution required an accommodation for the faith-based CPA; such allegations should not dissuade this Court from reaching the same conclusion.

Plaintiff further seeks to distinguish this suit from *Fulton* by arguing that her Establishment Clause claim implicates different and broader concerns than those raised in *Fulton*. (*See* ECF No. 85 at 15–16.) But each of the alleged violations Plaintiff points to—*e.g.*, "privileging the religious beliefs of Miracle Hill over those of Mrs. Maddonna," "funding Miracle Hill's discriminatory practices," allowing Miracle Hill to exercise "authority and discretion in accordance with and in service of its own religious beliefs and objectives," and "funding Miracle Hill's religious coercion and proselytization"—all relate directly to CPAs' selection of foster parents who share the CPAs' religious beliefs and the State Defendants' accommodation of the same. That is the entire thrust of the supposedly unconstitutional actions alleged in the Complaint (*see* ECF No. 1, ¶¶ 2–4, 58–61, 66, 71, 96–97, 112, 115),[3] and it is the same conduct underlying the analysis in *Fulton*. *See also Amos*, 483 U.S. at 337 n.15 (upholding legislation religious accommodation and specifically rejecting the plaintiff's argument that the accommodation "impermissibly delegates governmental power to religious employees and conveys a message of governmental endorsement of religious discrimination").

---

[3] The alleged "coercion" and "proselytization," for example, are merely byproducts arising solely and exclusively from Miracle Hill's selection of foster parents who share its religious beliefs. (*See* ECF No. 1 at ¶ 118(k)–(l).) These allegations—*i.e.*, that such recruiting and screening practices somehow amount to religious coercion of prospective foster parents or foster children—are incorrect. The *Fulton* Court noted that a CPA "does not seek to impose [its] beliefs on anyone else" merely by screening prospective foster parents on the basis of its religious beliefs. *Fulton*, 141 S. Ct. at 1882. Further, Plaintiff already conceded—and Judge Cain already ruled—that she lacks standing to assert claims for supposed harms to third parties such as children in foster care. (*See* ECF No. 24 at 9 n.1; ECF No. 43 at 17 n.6.)

6

In addition, Plaintiff complains that the State Defendants' Motion fails to explain how *Fulton* alters the analysis of Judge Cain's prior ruling declining to dismiss the Establishment Clause claim. (*See* ECF No. 85 at 15–16.) The State Defendants are not sure how they could explain this more plainly than they have already done by submitting a 27-page Motion arguing from the first page to the last that a recent, intervening, unanimous judgment by the Supreme Court in this exact factual context compels an entry of judgment and dismissal of Plaintiff's claims. Any potential or perceived uncertainties or ambiguities in First Amendment case law that may previously have left Judge Cain unwilling to dismiss Plaintiff's claims have now been put to rest by an intervening, unanimous judgment of the Supreme Court, holding that the accommodations sought and granted by the State Defendants were constitutionally permissible and required.

**II.     The facts and reasoning of *Fulton* are sufficiently parallel to this suit to be controlling.**

The State Defendants' Motion explained the factual and analytical parallels between *Fulton* and this suit that render its holding dispositive here. (*See* ECF No. 79 at 14–27.) Plaintiff's attempts to distinguish *Fulton* or limit it to its facts are not persuasive.

Plaintiff argues first that this suit is distinguishable from *Fulton* because here there is no dispute between a CPA and the State. (ECF No. 85 at 17–18.) Plaintiff apparently forgets that the accommodations she challenges in this suit grew out of exactly such a dispute, and the allegations of her Complaint make clear how that dispute would have ended in the absence of the State Defendants' accommodation—by Miracle Hill abandoning either its religious convictions or its ability to serve children in the foster-care system.

Plaintiff next argues that supposed distinctions between the allegations in this case and the facts of *Fulton* make it uncertain whether and how strict scrutiny should apply here. (ECF No. 85 at 18–22.) The State Defendants already explained the factual parallels between the two suits. (*See*

7

ECF No. 79 at 14–27.) But even assuming there were some meaningful factual distinctions between this case and *Fulton* (and thus strict scrutiny is not triggered by the presence of a discretionary exemption mechanism), the government's actions in this suit must nevertheless be strictly scrutinized because statutes require it, namely the federal Religious Freedom Restoration Act and the South Carolina Religious Freedom Act. *See* 42 U.S.C. § 2000bb-1 *et seq.*; S.C. Code Ann. § 1-32-40. Under a strict scrutiny analysis, when (as here) the government *can* accommodate religious exercise, it *must*. (*See* ECF No. 79 at 16–24.)

In addition, Plaintiff argues that in *Fulton*, same-sex couples had more than 20 other agencies to choose from, whereas in this suit Plaintiff allegedly had fewer options. (ECF No. 85 at 21–22.) Even assuming that to be true,[4] it is irrelevant. In *Fulton*, every qualified prospective foster parent had the ability to apply and serve; and in this suit, every qualified prospective foster parent has the ability to apply and serve, either directly with SCDSS or with a multitude of local private CPAs. The fact that Philadelphia (a much larger city than Greenville) is home to more private CPAs than Greenville is unsurprising but irrelevant to the analysis. The constitutional analysis is not dependent on population or on whether a prospective foster parent has five, ten, or fifteen CPAs to choose from. Nor is Plaintiff's subjective belief that some CPAs are better than others relevant to the constitutional analysis. These vague and desperate attempts to distinguish this case from *Fulton* are distinctions that make no difference, and "whatever doesn't make any difference doesn't matter" in the law. *McCall v. Finley*, 362 S.E.2d 26, 28 (S.C. Ct. App. 1987).

Lastly, Plaintiff argues that the State Defendants' accommodation of all faith-based CPAs, regardless of their religion, imposes a burden on *her* religious exercise and is impermissible

---

[4] While the Court must assume the truth of the allegations of the Complaint for purposes of this Motion, discovery will show that Plaintiff's allegations regarding the number of local CPAs available to work with her are incorrect by multiple orders of magnitude.

8

because it constitutes an official preference of Miracle Hill's religion over Ms. Maddonna's. (ECF No. 85 at 23.) This argument has previously been expressly rejected by both the Supreme Court and the Fourth Circuit. *See Amos*, 483 U.S. at 337 n.15 (holding the religious accommodation found in Title VII was constitutionally permissible even though it "[u]ndoubtedly" had resulted in the plaintiff's "freedom of choice in religious matters [being] impinged upon"); *id*. ("We find no merit in appellees' contention that § 702 'impermissibly delegates governmental power to religious employees and conveys a message of governmental endorsement of religious discrimination.'") (citation omitted); *Kennedy v. St. Joseph's Ministries, Inc.*, 657 F.3d 189, 194 & n.8 (4th Cir. 2011) ("Kennedy admits that St. Catherine could fire her for her religion without any recourse. . . . To the extent this reading of the exemption purports to impinge on the employee's free exercise rights, 'it was the Church . . . and not the Government, who put [the employee] to the choice of changing his religious practices or losing his job.'") (citing *Amos*, 483 U.S. at 337 n. 15) (alteration and ellipses in original).

### III.    *Fulton*'s effect on this suit is ripe for the Court's consideration.

The State Defendants' Motion explained that *Fulton* teaches that the accommodations sought and granted by the State Defendants were constitutionally permissible and required. (*See* ECF No. 79 at 14–27.) Astonishingly, one of Plaintiff's arguments in response is that *Fulton*'s effect on this lawsuit is not ripe for the Court's consideration. (*See* ECF No. 85 at 17–18.) Plaintiff's assertion is incorrect for at least four reasons.

*First*, it is contrary to binding case law, which holds that District Courts may consider and rule on Rule 12(c) motions arguing that intervening, controlling precedent makes the relief sought in the suit unobtainable or indicates the plaintiff is incapable of prevailing on the claims she has asserted. *See*, *e.g.*, *Pulte Home Corp. v. Montgomery Cnty., Md.*, 909 F.3d 685, 691, 695–96 (4th

9

Cir. 2018); *Drager v. PLIVA USA, Inc.*, 741 F.3d 470, 474–76 (4th Cir. 2014). That is precisely the argument the State Defendants have asserted in their pending Motion for Judgment on the Pleadings. If such arguments were ripe for consideration in *Pulte* and *Drager*, so too they are ripe for the Court's consideration here.

*Second*, *Fulton*'s applicability does not, as Plaintiff claims, require the Court to imagine a "hypothetical" future scenario. (*Contra* ECF No. 85 at 2–3, 17–18, 20.) Plaintiff has alleged a concrete and particularized set of regulatory, statutory, administrative, executive, and contextual facts that, accepted as true for purposes of this Motion, are neither hypothetical nor still imminent. Accordingly, *Fulton*'s applicability is not, as Plaintiff argues, merely an abstract and conjectural thought experiment. Rather, the question of whether the State Defendants' actions to accommodate faith-based CPAs were constitutionally permissible and required can be decided in this suit on the actual facts alleged in Plaintiff's Complaint. This analysis does not require the Court to speculate what Miracle Hill might one day do in the face of enforcement. (*Contra* ECF No. 85 at 18.) Rather, it merely requires the Court to analyze what Governor McMaster and Director Leach actually did do: request and provide an accommodation that is consistent and coextensive with the principles and holding of *Fulton*.

*Third*, when (as here) the free exercise right at issue has been established by controlling precedent, it is appropriate for a court to analyze a government defendant's argument that its action was intended to protect free exercise rights when the exception involved a right that was established by controlling precedent. *Forest Hills Early Learning Center, Inc. v. Lukhard*, 728 F.2d 230, 241 (4th Cir. 1984). The effect of *Fulton* on this suit has been properly raised to the Court and the question is ripe for this Court's analysis and adjudication.

10

## CONCLUSION

The Supreme Court's unanimous judgment in *Fulton* makes clear and confirms that the State Defendants' actions challenged in this suit were not only constitutionally permissible but also constitutionally required. Accordingly, the State Defendants' constitutionally compelled and appropriate accommodation of CPAs' rights under the Free Exercise Clause cannot constitute violations of the Establishment Clause, and the Court cannot award the relief sought against Governor McMaster and Director Leach in this suit.

For these reasons, Plaintiff has failed to state any claim upon which relief can be granted, and the relief she has requested cannot be awarded by this Court as a matter of law. Accordingly, Governor McMaster and Director Leach, in their official capacities, respectfully request the Court enter judgment on the pleadings and dismiss Plaintiff's claims against them with prejudice.

Respectfully submitted

NELSON MULLINS RILEY & SCARBOROUGH LLP

By: s/ Miles E. Coleman
    Miles E. Coleman
    Federal Bar No. 11594
    E-Mail: miles.coleman@nelsonmullins.com
    2 W. Washington St. / Fourth Floor
    Greenville, SC 29201
    (864) 373-2352

    Jay T. Thompson
    Federal Bar No. 09846
    E-Mail: jay.thompson@nelsonmullins.com
    1320 Main Street / 17th Floor
    Columbia, SC 29201
    (803) 799-2000

OFFICE OF THE ATTORNEY GENERAL
    Robert D. Cook, South Carolina Solicitor General
    Federal Bar No. 285
    E-Mail: bcook@scag.gov
    Post Office Box 11549
    Columbia, SC 29211
    (803) 734-3970

DAVIDSON, WREN & DEMASTERS, P.A.

Kenneth P. Woodington, #4741
E-Mail: kwoodington@dml-law.com
William H. Davidson, II #425
E-Mail: wdavidson@dml-law.com
1611 Devonshire Drive, 2nd Floor
Post Office Box 8568
Columbia, SC 29202-8568
(803) 806-8222

*Attorneys for Governor Henry McMaster and Director Michael Leach*

August 27, 2021
Greenville, South Carolina